UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIKELL CALVERT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-0288** |
| **ROBERT HENDERSON** | **SECTION "J"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual and Procedural Background

The petitioner, Mikell[2] Calvert ("Calvert"), is a convicted inmate currently incarcerated in the C. Paul Phelps Correctional Center in DeQuincy, Louisiana.[3] On May 13, 2005, Calvert was charged by bill of information in Washington Parish with four counts of sexual battery upon A.H.

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] His first name is spelled "Mickell" throughout the state court records.

[3] Rec. Doc. No. 1.

occurring between January 1, 2001, and March 1, 2005.[4]  He entered a plea of not guilty to the charges on October 5, 2005.[5]

The record reflects that, Calvert and his wife lived in one half of a duplex apartment building while the victim, A.H.,[6] and her mother lived in the adjacent section.[7]  A.H.'s mother was closely acquainted with Calvert and his wife, and she trusted them.  She would occasionally leave A.H. in the duplex and trusted Calvert to supervise her.  A.H. was nineteen years of age at the time of the trial.  The incidents in question occurred when she was about fifteen years of age.

A.H. testified in detail about four incidents involving Calvert that occurred on occasions when she was left alone at the duplex.  Before the incidents in question, A.H. considered Calvert a friend and talked to him about her problems.  She specifically stated, "I needed someone to watch out for me," and later added, "[a]nd he'd help me get through my problems with everything."

A.H. first described an occasion when Calvert visited her while she was in her apartment alone waiting for her boyfriend to arrive.  A.H. eventually fell asleep and Calvert was on top of her when she woke up.  A.H. specifically testified, "He was-he raped me down there."  When specific details were elicited, A.H. added, "Well, he was sticking his thing inside of me when I woke up.  And I asked him to stop and he wouldn't."  According to A.H., after the third or fourth time that she told Calvert to stop, he stopped and left the apartment.

---

[4]St. Rec. Vol. 1 of 5, Bill of Information, 5/13/05.

[5]St. Rec. Vol. 1 of 4, Minute Entry, 10/5/05.

[6]"We reference this victim, whose date of birth is May 4, 1986, only by her initials or as 'the victim.' *See* La. R. S. 46:1844(W)."

[7]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Calvert*, 968 So.2d 255 (La. App. 1st Cir. 2008) (Table); *State v. Calvert*, No. 2007KA1910, 2007 WL 2332323, at *1, *5-6 (La. App. 1st Cir. Jun. 6, 2008); St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2007-KA-1910, pp. 2-3, 9-11, 6/6/08.

A prior incident occurred when Calvert told A.H. that he was in love with her and wanted to be with her. Calvert kissed her on her neck, and she told him to stop. Calvert then forced himself on top of her. Calvert left after A.H. again told him to stop.

A.H. later went to the Calvert's apartment "to apologize . . . for being mean." Calvert told her that he wanted to show her something in his bedroom. As she sat on the bed, Calvert "went down" on her and again forcefully positioned his body over hers. After A.H. repeatedly told him to stop, Calvert allowed her to leave. During this incident, Calvert touched her "private area" with his "private area."

The final incident described by A.H. occurred when she visited him. Calvert pulled her onto his bed and again forcefully placed his body over hers. A.H. testified that she told Calvert "no" before he forced himself upon her and explained to him that she thought of him as only a friend. Calvert complied with her request that he stop and allowed her to leave the apartment.

According to A.H., Calvert used force in his physical contact with her on those occasions. A.H. also testified that Calvert threatened to hurt her and her parents if she told anyone about the incidents. She delayed telling anyone about the incidents because she was afraid to do so. A.H. ultimately told her mother that Calvert raped her. The incidents were reported and the victim was interviewed at the Children's Advocacy Center in Covington, Louisiana.

Calvert was tried before a jury on March 26 and 27, 2007, and he was found guilty on count one of sexual battery, on count two of attempted sexual battery, on count three of attempted sexual battery, and on count four of simple assault.[8] At a hearing held March 28, 2007, the Trial Court

---

[8] St. Rec. Vol. 1 of 4, Trial Minutes, 3/26/07; Trial Minutes, 3/27/07; Jury Verdict (Count 1), 3/27/07; Jury Verdict (Count 2), 3/27/07; Jury Verdict (Count 3), 3/27/07; Jury Verdict (Count 4), 3/27/07; Trial Transcript, 3/26/07; Trial Transcript, 3/27/07; St. Rec. Vol. 3 of 4, Trial Transcript (continued), 3/27/07.

denied Calvert's motions for new trial and for post-verdict judgment of acquittal.[9] The Trial Court thereafter sentenced Calvert on March 29, 2007, to serve ten years at hard labor on count one without benefit of parole, probation, or suspension of sentence.[10] He was sentenced to serve five years at hard labor on counts two and three without benefit of parole, probation, or suspension of sentence. On count four, the Court sentenced him to serve six months in the parish jail. The sentences were ordered to be served concurrently. The Court also denied Calvert's motion to reconsider the sentences.[11]

On direct appeal to the Louisiana First Circuit Court of Appeal, Calvert's appointed counsel raised four assignments of error:[12] (1) the prosecutor made an impermissible reference to defendant's failure to make a statement to police; (2) the trial court erred in allowing evidence of other crimes; (3) the evidence was insufficient to support the verdict; and (4) the Trial Court imposed an excessive sentence. On June 6, 2008, the Louisiana First Circuit affirmed Calvert's convictions and three of his sentences finding no merit to the claims raised. On review for errors patent, the Court determined that the maximum sentence available for count four, simple assault, was 90 days. The Court amended the sentence and remanded the matter for the Trial Court to correct the sentencing minute entry and criminal commitment to reflect the correct sentence.

---

[9]St. Rec. Vol. 1 of 4, Minute Entry, 3/28/07; Motion for New Trial, 3/28/07; Trial Court Order, 3/28/07; Motion for Post-Verdict Judgment of Acquittal, 3/28/07; Trial Court Order #2, 3/28/07.

[10]St. Rec. Vol. 1 of 4, Sentencing Minutes, 3/29/07; St. Rec. Vol. 3 of 4, Sentencing Transcript, 3/29/07.

[11]*Id.*; St. Rec. Vol. 1 of 4, Motion to Reconsider Sentence, 3/29/07; Trial Court Order, 3/29/07.

[12]St. Rec. Vol. 2 of 4, Appeal Brief, 2007-KA-1910, 3/5/08.

On April 17, 2009, the Louisiana Supreme Court denied Calvert's related writ application without stated reasons.[13] Calvert's conviction became final 90 days later, on July 16, 2009, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

In the meantime, on June 2, 2009, Calvert submitted an application for post-conviction relief to the Trial Court raising the following grounds for relief:[14] (1) ineffective assistance of counsel for (a) failure to file a motion to suppress the evidence where the only evidence was the victim's statements and DNA that did not match; (b) failed to investigate; (c) counsel failed to file a "motion for inconsistent statements" of the victim about when she first had sex with Calvert; and (d) counsel failed to challenge the defective bill of information; (2) the evidence was insufficient to support the verdict; and (3) he was exposed to double jeopardy because he was arrested on four counts of forcible rape and the charges were changed by the district attorney and the verdict was returned with other charges. The Trial Court denied the application on June 23, 2009, finding that the application failed to state a valid ground on which relief could be granted.[15]

---

[13]*State v. Calvert*, 6 So.3d 784 (La. 2009); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2008-KH-1602, 4/17/09. The State's assigned counsel, Kathryn Landry, continually fails to comply fully with the Court's briefing orders requiring complete copies of the state court records, including those from the trial court, appellate court, and Louisiana Supreme Court. As a result, the record does not contain a copy of this writ application for review of its contents or determination of its timeliness, neither of which are addressed by the State.

[14]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 11/20/06 (dated 11/14/06).

[15]St. Rec. Vol. 2 of 4, Trial Court Order, 6/23/09.

On August 7, 2009, Calvert submitted an untimely[16] writ application to the Louisiana First Circuit in which he raised different claims:[17] (1) the Trial Court denied him due process in failing to give adequate review to his post-conviction claims; (2) counsel was ineffective where he (a) failed to conduct a diligent investigation, and (b) failed to object to the admissibility of the State's witness testimony; (3) the State failed to timely prosecute him; (4) the evidence was insufficient to support the verdict; and (5) he was subjected to double jeopardy.

On November 23, 2009, the Louisiana First Circuit denied the writ application without stated reasons.[18] The Louisiana Supreme Court denied Calvert's related writ application without stated reasons on January 7, 2011.[19]

## II.     **Federal Habeas Petition**

On February 14, 2011, the clerk of this Court filed Calvert's petition for federal habeas corpus relief, in which he raised the following grounds for relief:[20]

(1)     the Louisiana court of appeal ruled contrary to *Doyle v. Ohio*, 426 U.S. 610 (1975), when it found no merit in his claim that the prosecutor made an impermissible reference to his failure to make a statement to police;

(2)     the state courts unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984) in finding that he failed to establish ineffective assistance of counsel where counsel:
    (a)     failed to object to the State's supplemental notice of intent to use other crimes evidence;

---

[16]Pursuant to La. Code Crim. P. art. 922 and La. App. R. 4-3, Calvert had 30 days from issuance of the Trial Court's order to file a writ application. Calvert dated his signature on the writ application on August 7, 2009, which was not within that time period.

[17]St. Rec. Vol. 4 of 4, 1st Cir. Writ Application, 2009-KH-1486, 8/10/09 (dated 8/7/09).

[18]St. Rec. Vol. 2 of 4, 1st Cir. Order, 2009-KW-1486, 11/23/09.

[19]*State ex rel. Calvert v. State*, 53 So.3d 467 (La. 2011); St. Rec. Vol. 2 of 4, 2010-KH-0107, 1/7/11; La. S. Ct. Letter, 2010-KH-107, 1/19/10 (showing postmark of 12/17/09; St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 10-KH-107, 1/19/10 (postmarked 12/17/09, dated 12/16/09); Supplemental Writ Application, 10-KH-107, 2/4/10.

[20]Rec. Doc. No. 1.

(b) failed to file a bill of particulars to narrow the dates, times and places;
(c) failed to compel the attendance of another investigator at the preliminary hearing and suppression motion to refute the testimony of Lieutenant Adams, the CAC interview by the victim, and the victim's allegations of where the incidents occurred;
(d) failed to elicit testimony to show that he was exonerated by the DNA evidence;
(e) failed to investigate the other incidents with the victim's best friend;
(f) failed to investigate the alleged threatening calls to discover the phone call was not in reference to the victim, but instead to her best friend who also levied charges against Calvert;
(g) failed to inform the jury that the victim might be fabricating the charges because of her best friend's rape allegations against Calvert, for which DNA evidence exonerated him;
(h) failed to elicit testimony that Jim Muller was accused of having sex with A.H.;
(i) failed to discover the phone records which would have lead to impeachment evidence against A.H. and her mother;
(j) failed to move for a continuance when the prosecutor admitted that she withheld evidence and failed to object or move for disclosure of the withheld evidence;
(k) failed to call Calvert's wife to establish that he was not living at the address at the time of the alleged incidents;
(l) failed to call Michael Bazor as a witness to testify that he was in jail when A.H. claimed he was present during the alleged rape and that her version of the facts was false;
(m) failed to lay a proper foundation to introduce the CAC tapes of A.H.'s statement to impeach A.H.'s testimony;
(n) failed to interview Jo Ann Beth or call her as a witness to challenge the State's case;
(o) failed to object to the State's leading the jury to believe that the tapes could not be played because they were hearsay;
(p) failed to inform the jury that there was no rape kit or DNA evidence in this case
(q) failed to file a motion in limine and investigate the prior bad acts evidence
(r) allowed the jury to hear evidence about the other crimes for which DNA evidence exonerated him;
(s) failed to object to the State's leading the witness to say there were four incidents when there was testimony of only three;
(t) failed to object to State's leading the witnesses to say four incidents of sexual intercourse occurred when it was only one incident of rape and two touchings;
(u) failed to properly impeach the witness regarding the inconsistent dates, times, locations, and number of incidents;
(v) failed to move to sever the counts;
(w) failed to poll the jury after the verdict;
(x) failed to object to a juror that was known to Calvert;
(y) failed to object to the State's repeated reference to his silence to infer guilt; and
(z) failed to object to repeated prosecutorial misconduct; and

(3)   the Louisiana court of appeal unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), to the facts when adjudicating the sufficiency of the evidence.

The State filed a response in opposition to Calvert's petition conceding that Calvert's petition was timely filed.[21] The State, however, argued that Calvert's petition should be dismissed for failure to exhaust state court remedies on each theory urged in support of the ineffective assistance of counsel claim.

Calvert filed a traverse to the State's opposition response and memorandum in which he indicates that he disagrees with the State's exhaustion defense.[22] He does not provide any discussion regarding this argument or make any further mention of exhaustion. He, instead, thoroughly argues his entitlement to equitable tolling and requests that the Court reject the State's limitations defense and find his petition timely filed.

### III.  **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 2, 2011.[24] The threshold questions in habeas review under the amended

---

[21] Rec. Doc. Nos. 10, 11.

[22] Rec. Doc. No. 14.

[23] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Calvert's petition on February 14, 2011, when pauper status was granted. Calvert dated his signature on the memorandum in support of the petition on February 2, 2011. This is the earliest date on which he could have

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State alleges that Calvert failed to exhaust state court remedies as to each argument in support of the ineffective assistance of counsel claim. Specifically, the State argues that Calvert failed to raise the arguments in any state court before bringing them in this federal petition. The State also suggests that of the three grounds in support of ineffective assistance of counsel brought on post-conviction review in the state trial court, he raised only two of those grounds in the Louisiana First Circuit and Louisiana Supreme courts. Thus, with regard to the three arguments initiated on post-conviction review, at least one of them was not properly presented to each of the state courts to have a complete round of review as required for exhaustion.

For the following reasons, the Court finds that Calvert has not fully exhausted available state court remedies as to each of the claims raised in this petition, and his petition should be dismissed for that reason.

**IV.    Failure to Exhaust**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be

---

submitted the pleadings to prison officials for mailing.

dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

In this case, a review of Calvert's pleadings filed in the state courts demonstrates that he has exhausted state court remedies as to his first (impermissible reference to his silence) and third (insufficient evidence) claims raised in this federal petition. These claims were presented on direct appeal to the Louisiana First Circuit and to the Louisiana Supreme Court on review from the appeal.

As for his second federal claim (ineffective assistance of counsel), Calvert has only had two arguments proceed on post-conviction from the Trial Court through the Louisiana Fourth Circuit and then with the Louisiana Supreme Court. Specifically, in the Trial Court he alleged ineffective assistance of counsel on four grounds: (a) failure to file a motion to suppress the evidence where the only evidence was the victim's statements and DNA that did not match; (b) failed to investigate; (c) counsel failed to file a "motion for inconsistent statements" of the victim about when she first had sex with Calvert; and (d) counsel failed to challenge the defective bill of information.

Of these arguments, he raised only two in seeking review in the Louisiana First Circuit and the Louisiana Supreme Court: (a) counsel failed to conduct a diligent investigation, and (b) failed to object to the admissibility of the State's witness testimony. These two assertions are the only exhausted arguments in support of Calvert's ineffective assistance of counsel claim. Curiously, however, Calvert has not specifically raised either of these exhausted claims in this federal petition, although they are arguably similar to some of the 26 arguments raised here.

Calvert also at no time completed review of the argument regarding counsel's failure to file a motion to suppress. However, a thorough reading of his petition here reveals that he has not specifically raised that argument in this court. The exhaustion of that argument is not relevant here.

Nevertheless, it is relevant that Calvert has at no time raised to any state court any of the specific grounds raised in this federal petition to support his ineffective assistance of counsel claim. In other words, Calvert has not fully exhausted his ineffective assistance of counsel claim and should not be allowed to proceed here without having first presented each such argument to the state courts. Calvert has not presented to this Court any grounds to support his ineffective assistance of counsel

claim which have been fully exhausted through the Louisiana courts. His petition should be dismissed to allow him that opportunity.

A review of Calvert's pleadings in each state court, including the applications presented to the Louisiana Supreme Court, reflect that only two of his claims, impermissible reference to his silence and insufficient evidence, raised in this federal petition were properly and specifically raised through the state courts for review. He did not, however, raise each of his arguments now asserted in support of the ineffective assistance of counsel claim.

A petitioner fails to satisfy the exhaustion requirement where he "'advances in federal court an argument based on a legal theory distinct from that relied upon in the state court.'" *Wilder*, 274 F.3d at 259. Furthermore, a petitioner has not exhausted his state claim when he offers material additional factual allegations and evidentiary support to the federal court that were not presented to the state courts. *Campbell v. Dretke*, 117 Fed. Appx. 946, 957 (5th Cir. 2004) (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000)). Thus, Calvert's failure to present each of these distinct arguments in support of the ineffective assistance of counsel claim to each level of the Louisiana courts in a procedurally proper manner renders the claim unexhausted. *See Wilder*, 274 F.3d at 259; *Baldwin*, 541 U.S. at 29.

The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Therefore, Calvert's mixed petition, presenting both exhausted and unexhausted claims, should be dismissed without prejudice to allow him to pursue complete exhaustion, unless he chooses to dismiss all of the unexhausted arguments/claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

**V.      Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Mikell Calvert's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[25]

New Orleans, Louisiana, this 27th day of July, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[25]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.